IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT Of CONNECTICUT

REI HOLDINGS, LLC,
a Utah limited liability company

        Plaintiff,

   v.

EDWARD MARCUS AKA EDWARD L.
MARCUS DBA THE MARCUS LAW
FIRM

       Defendant

Civil Action No.

Jury Trial Demanded

Plaintiff REI Holdings, LLC ("REI") hereby complains against Defendant Edward Marcus also known as Edward L. Marcus individually and doing business as The Marcus Law Firm ("Marcus") as follows:

**PARTIES, JURISDICTION, VENUE**

1.      REI is a Utah limited liability company with its principal place of business at 3400 North 1200 West Suite 207, Lehi in the State of Utah.

2.      Defendant Marcus is an individual who is and was during all times relevant to this proceeding licensed to practice law in the State of Connecticut and operating as The Marcus Law Firm as a sole proprietorship with a principal place of business at 275 Branford Road, North Branford in the State of Connecticut.

3.      This Court has jurisdiction pursuant to 28 USC § 1332 (a) in that REI and Marcus are citizens of different states and the amount on controversy exceeds $75,000.

4.      Venue is proper pursuant to 28 USC § 1391 (b).

1

## GENERAL ALLEGATIONS

5.      REI is in the business of purchasing portfolios of tax lien certificates issued by municipalities across the country.

6.      This complaint for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, legal malpractice, fraudulent nondisclosure, negligent non-disclosure and violation of Connecticut's Unfair and Deceptive Trade Practice statute arises out the representation by Marcus of REI  in connection with the purchase and subsequent collection of two (2) portfolios of tax lien certificates issued by the cities of Hartford, Bridgeport and West Haven, Connecticut (the "Portfolios").

7.      By way of background, in or around February 2015, Dan Friedman ("Friedman"), Thomas McOsker ("McOsker') and Donald Byrne ("Byrne") approached REI regarding the purchase of the Portfolios.   Shortly before approaching REI and unbeknownst to REI, McOsker, Byrne and Friedman individually and through their business entities acting in concert, had agreed to purchase rights to the tax liens in the Portfolios from the original owner of the liens, American Tax Funding, LLC ("ATF"), for approximately $400,000.00. The purchase was made for the express purpose of "flipping" the liens to REI for *full redemptive value* even though there were significant problems with the liens that negatively affected their value, which were known to McOsker, Byrne, Friedman, and their related business  entities,  LienClear001,LLC LienClear0002,LLC, BFNH, and Optimum Asset Management , LLC.

8.      After expressing interest in purchasing the Portfolios, REI was referred to Marcus by McCosker, Byrne and Friedman for representation**.**

2

9.      At that time, Marcus represented ATF in the collection of the liens in the Portfolios prior to the purchase by REI although Marcus failed to disclose that fact to REI at the time. Likewise, McCosker, Byrne and Friedman did not disclose to REI at that time that Marcus was representing ATF.

10.      Marcus was then retained by REI to represent REI in the purchase of the Portfolios. Marcus represented to REI that he had significant experience in the purchase and collection of Connecticut municipal tax liens and possessed the requisite professional expertise to represent REI in the purchase, resale and collection of the liens in the Portfolios. Based on his alleged experience and expertise, Marcus was in superior position to REI in that REI had not previously purchased tax liens portfolios in the State of Connecticut.

11.      Under an oral agreement in or around February 2015, REI and Marcus agreed that Marcus would provide all services necessary to ensure that valid and legal assignment of the tax liens in the Portfolios to REI so that REI had the ability and legal entitlement to re-sell and/or to collect, receive and retain the balance due and to enforce the collection of the tax liens.

12.      These necessary services included but were not limited to:

a.      Reviewing and negotiating the terms purchase agreements for the Portfolios;

b.      Investigating that the seller's representation in the purchasing agreement were true;

c.      Ensuring that the "Tax Lien Documents" as that term is defined in the agreements were delivered to REI;

d.      Investigating that the Servicer's representation in the Optimum Agreement were true;

e.      Confirming that the Servicer in the Optimum Agreement was correctly and legally licensed to act as a servicer of the Optimum Portfolio in the State of Connecticut; and

f.      Ensuring that REI was properly licensed to engage in the business of collecting

and foreclosing tax liens in the State of Connecticut.

13.     Marcus was governed by Connecticut's Rules of Professional Conduct, which are incorporated herein by reference as well as substantive case law concerning professional conduct, at all times during the course of his representation of REI. Those rules and the case law-imposed obligations on Marcus to REI which included but were not limited to Marcus' obligation not to engage in conduct involving dishonesty, fraud, self-interest, conflict of interest, deceit or misrepresentation. As an attorney and a fiduciary based on, *inter alia,* Marcus' superior knowledge to REI in purchasing tax liens the State of Connecticut, Marcus owed duties of candor, loyalty and honesty to REI at all times during his representation.

14.     The first of the two Portfolios was sold to REI by Optimum for $3,912,852.35 in February 2015 (the "Optimum Portfolio") under a certain Tax Lien Purchase and Servicing Agreement (the "Optimum Agreement").

15.     The second portfolio of the two Portfolios was sold to REI by LienClear0001 for $370,298.33 in July 2015 (the "LienClear 0001 Portfolio") under a certain Tax Lien Purchase and Sale Agreement (the "LienClear0001) Agreement,").

16.     REI paid Marcus the sum of $42,250 for legal services ($35,000) and lien recording fees ($7,250)   in connection with the purchase of the two Portfolios. REI also paid Marcus the sum of $411,167.90 for attorney fees and costs incurred by Marcus for services rendered to, upon information and belief, ATF and possibly others in connection with the collection of the liens in the Portfolios prior to the sale to REI. Thereafter, Marcus continuously represented REI in the enforcement and collection of the tax liens in both Portfolios until his termination on August 15, 2017.

17.     Upon information and belief, ATF was paid its purchase price for the sale of the Portfolios from the proceeds of the sale to REI.

18.     After purchasing the Portfolios and as more specifically described below, REI discovered massive problems with the Portfolios.

19.     The Portfolios were of little or no value, as a substantial portion of all of the liens were expired, paid off, released, or otherwise invalid or had little to no value compared to the purchase prices all of which was known by Marcus, McOsker, Byrne and Friedman.

20.     Additionally, many of the liens were low cost liens, for which the cost to enforce was greater than the amounts that could be recovered. The biggest unrecoverable costs were the title searches that were required to identify the volume and page number of the liens and the assignments – which Marcus should have had in its possession and control, but failed to provide to REI. Indeed, Marcus destroyed tax lien certificates that contained this information and failed to keep proper records to identify these liens at a later time.

21.     Having represented ATF in the collection of the Portfolios prior to the purchase by REI, Marcus knew or should have known that that the Portfolios were of little or no value, as a substantial portion of all of the liens were expired, paid off, released, or otherwise invalid or had little to no value compared to the purchase prices.

22.     McOsker and Byrne concealed and failed to disclose the Portfolios' lack of value to REI and instead engaged in a plan of deception with each other to induce REI to overpay for the Portfolios, for servicing and for attorneys' fees including but not limited to fees allegedly due to Marcus using other entities, like BFNH,LLC ("BFNH")  – an entity related to McOsker and/or Byrne and/or  Friedman to shield themselves from potential liability to REI.

23.     Upon information and belief, BCMG, LLC (another entity related to McOsker and/or Byrne and/or Friedman) BFNH, Optimum, Friedman, McOsker and Byrne, in concert with each other, deleted data from the Portfolios to conceal material facts from REI and induce REI to purchase the Portfolios. For instance, Friedman, McOsker and Byrne did not identify that certain liens in the Portfolios had already been paid off, and upon information and belief, removed this information from the notes on the Portfolios. This had the effect of artificially inflating the value – and therefore the purchase price – of the liens. ATF, the original purchaser of the Portfolios, would have conducted significant due diligence on its purchase and would have identified liens that had been paid off to the city and/or otherwise redeemed, released or voided, and that information would be available from ATF's servicing notes, if not for Friedman's, McOsker's and Byrne's intentional actions to delete such information. As attorney for ATF, Marcus knew or should have known or at least had access to information about the Portfolios held by ATF. Instead, REI had to pay Marcus exorbitant amounts as part of the acquisition of the Portfolios and then "relearn" about the problems, paying Marcus tens of thousands of dollars more in attorney's fees and costs along the way, even though Marcus had access to this information prior to the sale to REI of the Portfolios.

24.     Additionally, at the time of REI's purchase, many of the liens in the Portfolios had already been released or voided by the municipalities.

25.     Neither BCMG, LienClear0001 nor Optimum ever provided the tax lien certificates for the liens transferred to REI.  In fact, unbeknownst to REI at the time of the purchase, Marcus had destroyed many of the tax lien certificates.

26.     Prior to closing of the Optimum Portfolio, REI was not informed by Marcus that the municipalities needed to consent to the transfer of the liens in the Portfolios to REI before the transfer occurred. The consent of the municipality was required for any subsequent assignments of the liens. Indeed, in the Optimum Agreement the so called "sellers" represented and warranted that, among other

things, they had the authority to sell the liens to REI which was not true. As counsel for ATF, Marcus knew that these consents were required and had not been obtained at the time of closing.

27.     Even following the closing of the Optimum Agreement, Marcus failed to obtain consent from the City of Bridgeport and the City of West Haven for the assignment of the liens to REI. Instead, Marcus only obtained consent for the assignment of the liens to Optimum as servicer for REI.

28.     With respect to the liens the Portfolios in which payments had been made by the property owners directly to the municipalities, the municipalities denied payments to REI based on lack of privity of contract because the municipalities' consent was not obtained prior to the sale of the liens to REI. At the time it purchased the liens, it was REI's understanding that any payments made by the property owners on account of the liens to the municipalities would be remitted or forwarded to REI.

29.     After the sale of the Portfolios, REI learned – because Marcus had not informed REI prior to the closing - that REI could not resell the liens without consent of the municipalities. Marcus, Byrne, McOsker and Friedman  knew that REI intended to resell the liens to individual customers when liens were sold to REI. Marcus did not inform REI until November of 2015 that such practice was disallowed by the municipalities, causing REI to have to refund numerous customers and otherwise disrupting REI's business practices.

30.     At present and in a related matter, REI has filed a Consolidated Complaint in the United States District Court for the District of Delaware, Case No. 1:18-cv-01401-MN (the "Delaware Case") against Byrne, McOsker and Friedman and their related  and entities to remedy *inter alia* (i) the fraudulent inducement and subsequent breaches of two agreements pursuant to which REI purchased the Portfolios for $370,298.33 and $3,912,852.35, respectively, and (ii) the breach of the corresponding servicing agreements.

31.     But for the conduct of Marcus prior to closing described infra, REI would not have purchased the Portfolios for the purchase prices stated in the Optimum Agreement and LienClear0001 Agreement.

## COUNT I
### (BREACH OF CONTRACT)

32.     REI incorporates the allegations of paragraphs 1- 31 with the same force and effect as if set forth herein.

33.     Marcus breached its oral agreement to represent REI in the purchase of the Portfolios such that REI would receive the benefits thereof including but not limited to obtaining clear and valid of existing tax liens for resale, enforcement and/or collection in the following ways:

a.     Marcus failed to ensure that the cities provided the necessary consents to the transfers of the Portfolios to REI in advance of the closing;

b.     While the consents from West Haven and Bridgeport were later obtained, the consent from Hartford was not obtained and resulted in payments made to Hartford directly on account of the liens in the Portfolios which the City of Hartford then refused to remit to REI;

c.     Marcus failed to confirm that Optimum was licensed to collect liens in the State of Connecticut and then billed REI for the licensing fee of $7500 without disclosing the nature of same to REI;

d.     Marcus failed to ensure that REI was properly licensed thereby having authority to do business in the State of Connecticut as a bulk buyer of delinquent debt;

e.     Marcus failed to ensure (or at least inquire) that the land records and tax collector records accurately reflected both that the liens were assigned to REI and that the liens were outstanding and not redeemed or discharged;

f.      Marcus failed to adequately represent REI by ensuring (or at least inquiring) that the assigned liens in the Portfolios were and continued to be reflected in the databases of Hartford, Bridgeport and West Haven; and

g.      Marcus destroyed many of the tax lien certificates without noting the book and page reference of the applicable land records where the tax liens in the Portfolios were recorded and failed to advise REI of same prior to closing thereby costing REI thousands of dollars in unrecoverable fees as well as causing hundreds of liens to become uncollectable due to the unrecoverable fees.

34.     As a result of Marcus' breaches of its agreement, REI has been damaged.

## COUNT II
## (BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING)

35.     REI incorporates the allegations of paragraph 1- 33 with the same force and effect as if set forth herein.

36.     By virtue of its agreement, REI and Marcus were parties to a contract under which Marcus represented REI and REI reasonably expected to receive certain benefits.

37.     These benefits included but were not limited to:

a.      Valid and clear tile to the tax liens in the Portfolios;

b.      Valid and enforceable liens that have not been redeemed, discharged; and

c.      The ability to re-sell the liens purchased in the Portfolios.

38.     Marcus engaged in certain conduct that injured REI's right to receive these benefits in the following ways which include but are not limited to:

a.      Marcus represented ATF in the collection of the liens in the Portfolios prior to the sale of the Portfolios to REI without initially disclosing same;

b.      Marcus failed to provide REI with the lien information it had obtained during the course of its representation of ATF in the collection of the liens in the Portfolios;

9

    c.    Marcus either knew that many of the liens in the Portfolios were redeemed, discharged or worthless or Marcus intentionally declined and failed to determine how many of the liens in the Portfolios were redeemed, discharged or were worthless;

    d.    Marcus failed to advise REI that many of the liens in the Portfolios were discharged, redeemed or worthless or, that Marcus could ascertain in whole or in part that many of the liens in the Portfolios were discharged, redeemed or worthless;

    e.    In facilitating the consummation of the sale of the Portfolios to REI with the knowledge that many of the liens in the Portfolios were discharged redeemed or worthless, Marcus advanced his own interests and those of ATF and the sellers of the Portfolios over REI, because Marcus knew that as part of the sale of the Portfolios to REI, Marcus would receive attorney's fees and costs previously incurred in the amount of $411,167.50. Said sum may have also included the attorney's fees incurred by the sellers of the Portfolios for the sales of the Portfolios which REI will investigate given the opportunity for discovery;

    f.    In facilitating the consummation of the sale of the Portfolios to REI with the knowledge that many of the liens in the Portfolios were discharged, redeemed or worthless, Marcus advanced his own interests and those of ATF and the sellers of the Portfolios over REI, because Marcus knew that he would receive an exorbitant fee to close the transaction and then to continue to represent REI in the collection of the liens once the Portfolios were purchased by REI; and

    g.    Prior to closing, Marcus failed to advise REI that it would not be able to sell the liens in the Portfolios once they were purchased and in fact did not so advise REI until November 16, 2015 by letter.

    39.    When engaged in the aforesaid conduct, Marcus was acting in bad faith, in self-interest and to the detriment of REI which resulted in damages and foreseeable damages to REI.

## COUNT III
## (BREACH OF FIDUCIARY DUTY)

40.     REI incorporates the allegations of paragraphs 1- 39 with the same force and effect as if set forth herein.

41.     Based on the attorney-client relationship between Marcus and REI and Marcus' knowledge and understanding of tax lien sales in Connecticut that was superior to REI's understanding, a fiduciary relationship existed.

42.     The fiduciary relationship between REI and Marcus gave rise to, *inter alia*, duties of candor, loyalty and honesty owed to REI by Marcus and an obligation on the part of Marcus to act in the best interests of REI and not in conflict with others, in good faith in any matter pertaining to REI, and to act without advancing Marcus own interests or those of others above the interests of  REI.

43.     By his acts and conduct set forth herein, Marcus acted in bad faith and in his own best interest and the best interests of others to the detriment of REI.

44.     By his acts and conduct set forth herein, Marcus breached his fiduciary duty to REI which proximately caused damages and foreseeable damages to REI.

## COUNT IV
## (LEGAL MALPRACTICE)

45.     REI incorporates the allegations of paragraph 1- 44 with the same force and effect as if set forth herein.

46.     By virtue of the oral agreement to represent REI in connection with the purchase of the Portfolios and thereafter Marcus' continuous representation of REI through August 15, 2020 when he was terminated, an attorney client relationship existed between REI and Marcus.

47.     During the course of Marcus' representation of REI, Marcus committed a series of wrongful and/or negligent acts or omissions in violation of the standard of care including but not limited to the acts and conduct set forth in paragraphs 1-44 herein and the following:

a.     In foreclosing the liens in the Portfolios, Marcus failed in many cases to name lien holders whose liens were subsequent in time and right to those of REI as defendants thereby resulting in the subsequent liens not being foreclosed out and retaining their status as encumbrances on the subject properties to the detriment of REI which allowed them to later initiate foreclosure proceedings against REI to the detriment of REI;

b.     Prior to closing, Marcus failed to advise REI that it would not be able to sell the liens in the Portfolios once they were purchased and in fact did not so advise REI until November 16, 2015 by letter;

c.     In obtaining the consents from the municipalities, Marcus negotiated away rights and privileges some of which that had been enjoyed by ATF, without advising REI of the legal consequences. Such rights and privileges included, but are not limited to:

i.     Failing to incorporate the assignment contracts between the municipalities and ATF into the assignments to REI, which disallowed recovery of taxes paid directly to the municipalities instead of to ATF prior to closing;

ii.     Limiting the costs and fees recoverable;

iii.     Limiting REI's ability to further assign the tax liens;

iv.     Eliminating the first right of refusal ATF enjoyed to purchase subsequent tax liens from the municipalities; and

v.     Preventing REI from bringing foreclosure proceedings on the tax liens until six (6) months after the consents were signed.

d.     Marcus failed to adequately represent REI when the City of West Haven released the record of the assigned tax liens - shortly after the sale to REI -   in the Portfolios resulting in the incurrence of

additional fees and costs or effectively precluding the collection of smaller liens where the filing of a lawsuit was deemed not cost effective;

   e. In all the foreclosure actions filed by Marcus for REI, Marcus failed to name as proper Defendants other tax lien holders which resulted in the continued existence and enforceability of those tax liens to the detriment of REI;

   f. Marcus even represented some of those subsequent lien holders in foreclosure actions against REI after REI had acquired the property, or in cases, where those lienholders were simply attempting to foreclose out REI's tax liens before REI initiated its own foreclosure; and

   g. Marcus failed to file as additional method of collection, lawsuits against the owners of the properties when the tax liens in the Portfolios were recorded.

   48. Marcus wrongful acts and/or omissions were the proximate cause of damage to REI which damage can be characterized as the loss of REI's investment in the Portfolios and/or the loss of potential profit for the Portfolios, and/or the incurrence of additional and unnecessary costs and attorney's fees, and/or the diminution in the value of the portfolios and/or all losses attributable to Marcus' failure to advise REI that it would not be permitted to assign the liens in the Portfolio after the purchase of same.

<u>**COUNT IV**</u>
**(UNJUST ENRICHMENT)**

   49. REI incorporates the allegations of paragraph 1- 48 with the same force and effect as if set forth herein.

   50. Based on Marcus' breaches of the covenant of good faith and fair dealing and his breaches of his fiduciary duty to REI, REI would not have consummated the Optimum Agreement and the LienClear0001 Agreement and as such, Marcus was wrongfully paid the sums $42,750 and $411,167.90 under circumstances that are unjust, unconscionable and contrary to equity and good conscience.

51.     Accordingly, Marcus did not earn the fees paid to him by REI and was unjustly enriched thereby.

52.     Marcus acted in bad faith, in self-interest and to the detriment of REI which resulted in damage to REI.

## COUNT VI
### (BREACH OF IMPLIED CONTRACT)

53.     REI incorporates the allegations of paragraph 1- 52 with the same force and effect as if set forth herein.

54.     Connecticut's Rules of Professional Conduct and substantive case law imposed certain duties and obligations on Marcus when representing REI both as an attorney and as a fiduciary including, but not limited to, the duties of candor, loyalty, honesty and to represent REI zealously and without conflicts of interest.

55.     Marcus' conduct as aforesaid, constitutes a breach of said duties an obligation which imposes an implied contract at law between REI and Marcus.

56.     As a result of Marcus' breach of its implied contract at law with REI, REI was damaged.

## COUNT VII
### (FRAUDULENT NONDISCLOSURE)

57.     REI incorporates the allegations of paragraph 1- 56   with the same force and effect as if set forth herein.

58.     Based on Marcus' conduct aforesaid, and in particular the following, constitutes a knowing and intentional failure to make a full and fair disclosure of known facts connected with the Portfolios about which Marcus had   assumed to speak, under circumstances in which there was a duty to inform REI as REI's attorney and as a fiduciary:

     a.    Marcus' knowing and intentional failure to initially advise REI that it had represented ATF in the collection of the liens in the Portfolios and had personal knowledge thereof;

     b.    Marcus' knowing and intentional failure to advise REI that he either knew that many of the liens in the Portfolios were redeemed, discharged or worthless or that he could determine how many of the liens in the Portfolios were redeemed, discharged or were worthless; and

     c.    Marcus' knowing and intentional failure to advise REI that it would not be able to sell the liens in the Portfolios once they were purchased and in fact did not so advise REI until November 16, 2015 by letter.

59.    Marcus' fraudulent nondisclosures were made to induce REI into purchasing the Portfolios.

60.    REI trusted and relied on Marcus when representing it in connection with the purchase of the Portfolios.

61.    REI purchased the Portfolios to its detriment and has been damaged.

**COUNT VIII**
**(NEGLIGENT NONDISCLOSURE)**

62.    REI incorporates the allegations of paragraph 1-61 with the same force and effect as if set forth herein.

63.    Marcus' conduct as aforesaid, and in particular the following in violation of the standard of care, constitutes a negligent failure to make a full and fair disclosure of known facts connected with the Portfolios about which Marcus had   assumed to speak, under circumstances in which there was a duty to inform REI as REI's attorney and as a fiduciary:

     a.    Marcus' failure to advise REI that it had represented ATF in the collection of the liens in the Portfolios and had personal knowledge thereof;

15

b.      Marcus' failure to advise REI that he either knew or should have known that many of the

liens in the Portfolios were redeemed, discharged or worthless or that he could determine how many of

the liens in the Portfolios were redeemed, discharged or were worthless; and

c.      Marcus' failure to advise REI that it would not be able to sell the liens in the Portfolios

once they were purchased (and in fact did not so advise REI until November 16, 2015 by letter) under

circumstances where Marcus knew or should have known that REI could not re-sell the Portfolios.

64.      REI trusted and relied on Marcus when representing it in connection with the purchase

of the Portfolios.

65.      REI purchased the Portfolios to its detriment and has been damaged.

## COUNT IX

### (VIOLATION OF CONNECTICUT'S UNFAIR AND
### DECEPTIVE TRADE PRACTICES STATUTE C.G.S. Sec. 42-110b)

66.      REI incorporates the allegations of paragraphs 1 – 65 with same force and effect as if set

forth herein.

67.      Marcus' conduct as aforesaid and in particular the following were related to the financial

and entrepreneurial aspects of Marcus' practice of law:

a.      In facilitating the consummation of the sale of the Portfolios to REI with the knowledge

that many of the liens in the Portfolios were discharged redeemed or worthless, Marcus advanced his

own entrepreneurial and financial interests and those of ATF and the sellers of the Portfolios over REI,

because Marcus knew that as part of the sale of the Portfolios to REI, Marcus would receive attorney's

fees and costs previously incurred in the amount of $411,167.50. Said sum may have also included the

attorney's fees incurred by the sellers of the Portfolios for the sales of the Portfolios which REI will

investigate given the opportunity for discovery;

b.      In facilitating the consummation of the sale of the Portfolios to REI with the knowledge that many of the liens in the Portfolios were discharged, redeemed or worthless, Marcus advanced his own entrepreneurial and financial interests and those of ATF and the sellers of the Portfolios over REI, because Marcus knew that he would receive an exorbitant fee to close the transaction and then to continue to represent REI in the collection of the liens once the Portfolios were purchased by REI; and

c.      Prior to closing, Marcus failed to advise REI that it would not be able to sell the liens in the Portfolios once they were purchased and in fact did not so advise REI until November 16, 2015 by letter. This had the effect of leading REI to believe that it could re-sell the liens thereby facilitating the sale of the Portfolios and the payment of the foregoing fees to Marcus.

68.     Marcus' conduct was unfair and deceptive in violation of Connecticut's Unfair Trade Practice Statute C.G.S. 42- 110b et seq.

69.     Said conduct:

a.       offends public policy as it has been established by statutes, the common law, or otherwise and in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness;

b.       is immoral, unethical, oppressive, or unscrupulous; and

c.       caused substantial injury and ascertainable loss and damages to REI.

WHEREFORE, Plaintiff, REI Holdings, LLC respectfully requests the entry of the following relief against the Defendant Edward Marcus also known as Edward L. Marcus individually and doing business as The Marcus Law Firm as follows:

1.      Judgments on all counts against Defendant Edward L Marcus also known as Edward L. Marcus individually and doing business as The Marcus Law Firm;

2.      Compensatory and/or consequential damages under all counts against Defendant Edward

Marcus also known as Edward L. Marcus individually and doing business as The Marcus Law Firm in an amount to be proven at trial;

3.     Punitive damages in an amount to be determined at trial;

4.     Pre and post judgment interest, plus costs attorney's fees and expenses; and

5.     Such further relief as this Court deems just and proper.

Respectfully submitted,
REI HOLDINGS, LLC

_____/s/ David A. Lavenburg_____
David A. Lavenburg, Esq.
Federal Bar No. ct09694
Kroll, McNamara, Evans & Delehanty, LLP
65 Memorial Road, Suite 300
West Hartford, CT 06107
(860) 561-7070 (Telephone)
(860) 561-7075 (Facsimile)
dlavenburg@kmelaw.com

## **VERIFICATION**

Under the pains and penalties of perjury I state that I have reviewed the foregoing complaint and that  the facts and allegations contained therein are true and accurate based on my personal knowledge and belief.

PLAINTIFF,
REI Holdings, LLC

DocuSigned by:

*Brandon Neff*

C0A8BC4A059D439

By: Brandon Neff
Manager
8/13/2020